UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA LYNETTE MAFFETT,

      Plaintiff,                   CIVIL ACTION NO. 10-14356

      v.                            DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    ***A.    Proceedings in this Court`***

On October 29, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 11, 12).

    ***B.    Administrative Proceedings***

Plaintiff filed the instant claims on April 20, 2007, alleging that she became unable to work on April 1, 2005 (Tr. 15, 92-102). The claim was initially disapproved by the Commissioner on August 20, 2007 (Tr. 15, 54-61). Plaintiff requested a hearing and, on October 6, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) B. Lloyd Blair,

who considered the case *de novo*. In a decision dated December 3, 2009, the ALJ found that Plaintiff was not disabled (Tr. 12-26). Plaintiff requested a review of this decision on December 30, 2009 (Tr. 4-5). The ALJ's decision became the final decision of the Commissioner on August 27, 2010 when the Appeals Council denied Plaintiff's request for review (Tr. 1-3).

In light of the entire record in this case, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     STATEMENT OF FACTS

### A.     *ALJ Findings*

Plaintiff was 44 years old at the time of the most recent administrative hearing (Tr. 17). Plaintiff had past relevant work as a loan officer and as a guest services worker (Tr. 21). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 1, 2005 (Tr. 17). At step two, the ALJ found that Plaintiff had the following "severe" impairments: history of dorsolumbar compression fractures and left foot injury, status-post 1985 motor vehicle accident. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 19).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...with the following [additional restrictions]: she can lift and carry up to 20 pounds occasionally and 10 pounds frequently; she can sit 6 hours in an 8-hour workday, and can stand and/or walk 6 hours in an 8-hour workday; she cannot use ladders,

scaffolds or ropes; she cannot walk on uneven surfaces; she can only occasionally crawl, kneel, stoop, ramp or stair climb" (Tr. 19). At step four, the ALJ found that Plaintiff could perform her previous work as a loan officer and as a guest services worker, because such work did not require activities precluded by her residual functional capacity. (Tr. 21) Thus, the ALJ determined that Plaintiff was not disabled at step four of the process. The ALJ proceeded to step five, in the alternative. The ALJ denied Plaintiff benefits at step five based upon an application of the Medical-Vocational rules (or "Grids") (Tr. 21-22).

### B.    Administrative Record

#### 1.    Plaintiff's Testimony and Statements

At the hearing, Plaintiff testified about her work history: she worked part-time from home as a loan officer between 2000 and 2006 (Tr. 35). In around August of 2008, Plaintiff worked for two months as a telemarketer (Tr. 35). She last worked twenty to twenty-five hours per week in guest services at a Quality Suites Hotel in June of 2009 (Tr. 34).

Plaintiff testified that she was disabled due to back and left foot pain – which she rated as 8 on a scale of 1 to 10 – and that napping helped her back pain (Tr. 36). Plaintiff claimed that she did not cook, wash laundry, or shop for groceries; she could not bend, squat, climb more than one stair at a time, lift any weight or walk far, but could stand for ten minutes and sit for twenty or twenty five minutes (Tr. 40-42).

#### 2.    Medical Evidence

Plaintiff did not attempt to summarize the medical evidence in her motion for summary judgment. Defendant accurately summarized the medical evidence as follows:[1]

---

[1] Some editing and substantive additions to Defendant's summary of the medical record have been made.

In September 1985, Plaintiff was in a car accident and sustained acute spinal compression fractures at D12, L1, and L2, as well as a contusion to her left foot (Tr. 213).

In December 1992, Plaintiff complained to Dr. Pat Devito of mid-thoracic back pain with some radiation upward, but more radiation downward into her buttock area (Tr. 210). She also complained of left foot pain (Tr. 210). The doctor recommended an MRI, which revealed a small Schmorl's node (herniation of the nucleus pulposus through a cracked vertebral end plate into the vertebral body) deforming the superior end plate at T12; the MRI did not show any epidural disc herniation or other epidural mass (Tr. 210, 212). Dr. Devito prescribed Naprosyn, an anti-inflammatory and pain medication (Tr. 210).

MRIs of Plaintiff's thoracic and lumbar spine performed in February 1999 were normal (Tr. 156). Plaintiff presented to Dr. Christopher Abood in March 1999 with complaints of severe, intermittent mid and low-back pain (Tr. 151). After reviewing the MRI results, Dr. Abood recommended that Plaintiff pursue non-surgical treatment, such as physical therapy and appointments at a pain clinic (Tr. 153). Plaintiff elected physical therapy, but was discharged from the treatment program because she repeatedly failed to attend appointments (Tr. 147).

In March 2006, Plaintiff presented to a nurse in Dr. Pamela Thompson's office after a visit to the emergency room following a car accident (Tr. 175). She complained of intermittent lower back to left hip pain and left foot pain (Tr. 175). Plaintiff could only perform a straight leg raise to forty degrees on the right and thirty degrees on the left and had a limited ability to bend forward (Tr. 175). Plaintiff displayed pain to palpation across L2-3 on the left and had poor abduction on the left and slightly better abduction on the right (Tr. 175). The nurse diagnosed lumbago, with pre-existing vertebral problems, ordered a lumbar spine x-ray, recommended

physical therapy, and prescribed Vicodin (pain medication), Ultram (pain medication), and Naprosyn (anti-inflammatory drug) (Tr. 175).

Plaintiff began physical therapy later that month (Tr. 203). Between March and May 2006, Plaintiff attended seven appointments and cancelled or failed to show up for eight appointments (Tr. 202). At discharge, Plaintiff's therapist noted that her ranges of lumbar spine motion were unchanged, her strength had worsened, and that Plaintiff reported no significant change in her symptoms (Tr. 202).

Plaintiff returned to the nurse in Dr. Thompson's office in August 2006 for a follow-up appointment and a check on her use of Vicodin (Tr. 171). The nurse instructed Plaintiff to stop using Vicodin daily and to take it only as needed and also recommended physical therapy (Tr. 171). Later that month, Plaintiff presented to a doctor, whose signature is illegible (and was presumably Dr. Thompson), with complaints of back and rib pain (Tr. 169). Plaintiff stated that the pain was ongoing since her 1985 accident and that a neurosurgeon and another doctor had stopped treating her for insurance reasons (Tr. 169). Plaintiff expressed interest in osteopathic manipulative treatment (OMT) (Tr. 170). After an examination, and apparent OMT with fifty percent improvement, Dr. Thompson diagnosed sacral instability, thoracic myositis (inflammation of skeletal muscles), and piriformis spasms (Tr. 169).

In April 2007, Dr. Thompson noted that Plaintiff was taking Naprosyn for back and foot pain, Vicodin for severe back pain, and Elavil as a sleep aid (Tr. 165). Dr. Thompson noted that Plaintiff complained of foot and back aches and that she had a flattening lumbar curve (Tr. 166). Plaintiff's gait, station, range of motion (including left lower extremity), strength, reflex activity, cranial nerve functions, mood, affect and orientation were all normal (Tr. 166).

In June 2007, Plaintiff presented to Dr. Jeffrey Levin, a neurologist, with complaints of lower back pain; pain, dysesthesias, and weakness in her left foot; and radicular symptoms in both legs, predominantly in the L5 distribution and worse on the left (Tr. 206, 215). Plaintiff reported that she had stopped working the year before because the company that employed her went out of business (Tr. 206, 215). On examination, Plaintiff had pain with straight leg raising; weakness on dorsiflexion bilaterally, worse on the left; decreased inversion strength; a slightly decreased ankle jerk; and decreased sensation, predominantly in the L5 distribution (Tr. 215). She also had some dysesthesias in the dorsum of the left foot, a mildly antalgic gait, and limitation in extreme lumbar spine flexion and extension (Tr. 215).

Plaintiff showed no obvious weakness in her upper extremities; her gait was only mildly antalgic and her spinal mobility was only restricted at the extremes (Tr. 206, 215). Dr. Levin diagnosed lumbar radiculopathy, most prominent at L5, and possible sympathetic dystrophy in the left foot (Tr. 215). He prescribed Neurontin for pain and recommended MRIs of the left foot and lumbar spine, a bone scan, and an EMG (Tr. 216). Dr. Levin made no evaluation of Plaintiff's ability to work in light of his diagnosis.

Plaintiff presented to Dr. Thompson in October 2007 for a medication check and reported that she was very stiff in her back and feet and had "a lot" of lower back and thoracic pain (Tr. 207). Plaintiff also reported left foot pain, pain while walking, and occasional sensation of pins and needles (Tr. 208). Dr. Thompson noted that Plaintiff had not had x-rays that had been requested twice (Tr. 207). Dr. Thompson prescribed Vicodin and recommended again that Plaintiff have lumbosacral and left foot x-rays (Tr. 207).

In September 2009, Dr. Ramaswamy Mohan completed an assessment form of Plaintiff's physical abilities and indicated that she could occasionally lift less than ten pounds, stand and

walk for less than two hours per workday, and sit for less than six hours per work day (Tr. 209).

Dr. Mohan also indicated that Plaintiff had severe limitations in her ability to push and pull with

her arms and legs and would experience recurring two-hour work disruptions due to symptoms

(Tr. 209). Following the hearing, the ALJ permitted Plaintiff to produce additional documents

from Dr. Mohan in support of his September 2009 assessment. Plaintiff submitted routine blood

test results (Tr. 217-219, 223-224), pap smear test results (Tr. 220, 222) and breast mammogram

results (Tr. 221), but no documents related to her spinal condition.

### 3.    Vocational Expert

During the hearing, the ALJ asked a vocational expert (VE) whether Plaintiff's past work

as a loan officer or guest services manager could be performed by a person who could perform

"light" work with the following additional limitations: no climbing ladders, ropes or scaffolds;

only occasional stooping, kneeling, crawling and climbing ropes or stairs; and no walking on

uneven surfaces (Tr. 48). The VE testified that such a person could perform Plaintiff's past work

as a loan officer or in guest services (Tr. 48).

### C.    *Plaintiff's Claims of Error*

Plaintiff raises one overarching argument on appeal, namely, that the ALJ erred giving

only minimal weight to the opinion of Plaintiff's treating physician, Dr. Mohan (Pl.'s Br. at 9-

11). Plaintiff also argues that the ALJ did not submit an accurate hypothetical question to the

vocational expert, but this argument also appears to be grounded upon a challenge to the ALJ's

treatment of Dr. Mohan's opinion.

III.    DISCUSSION

    *A.    Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a

-8-

determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its

weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant

-11-

numbers exist in the national economy that [claimant] could perform given [his] RFC and

considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v)

and (g).

### C.    *Analysis and Conclusions*

As noted above, Plaintiff's sole argument on appeal is that the ALJ erred in giving

minimal weight to an opinion from Plaintiff's treating physician, Dr. Mohan.  Under the treating

source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds

the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic

techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §

404.1527(d)(2)); *see also* SSR 96–2p.  Furthermore, even where the ALJ finds that a treating

physician's opinion is not entitled to controlling weight, he or she must apply the following

non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length

of the treatment relationship and the frequency of examination," (2) "the nature and extent of the

treatment relationship," (3) the relevant evidence presented by a treating physician to support his

opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization

of the treating source." *Id.*; 20 C.F.R. § 404.1527.

The treating-source rule also "contains a clear procedural requirement."  *Wilson*, 378 F.3d

at 544 (citing 20 C.F.R. § 404.1527(d)).  In particular, "the [ALJ's] decision must contain

specific reasons for the weight given to the treating source's medical opinion, supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the

reasons for that weight."  SSR 96–2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*,

-12-

486 F.3d 234, 242 (6th Cir. 2007).  Moreover, "a failure to follow the procedural requirement of

identifying the reasons for discounting the opinions and for explaining precisely how those

reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even

where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at

243.

The issue of whether Plaintiff is disabled within the meaning of the Social Security Act is

reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e); *see also Warner v. Comm'r of Soc.

Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x

472, 474 (6th Cir. 2008).  The ALJ "is not bound by conclusory statements of doctors,

particularly where they are unsupported by detailed objective criteria and documentation."

*Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F.

App'x 336, 340 (6th Cir. 2008).  An opinion that is based on Plaintiff's reporting of her

symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human

Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873,

876-77 (6th Cir. 2007).

This Magistrate Judge finds that the ALJ complied with the procedural aspects of the

treating-physician rule and that his ultimate decision to reject Dr. Mohan's opinion is within the

"zone of choice" accorded an ALJ on substantial evidence review.  The ALJ noted that Dr.

Mohan provided no objective corroboration for his September 2009 assessment (Tr. 21).

Specifically, the ALJ found as follows:

> The undersigned examined the reports and views of Dr. Mohan, [Plaintiff's]
> current treating family physician.  In a September 2009 medical source statement
> [Tr. 209], Dr. Mohan listed limitations for [Plaintiff] that were not compatible
> with the ability to perform full-time competitive employment (e.g., [Plaintiff] can
> sit less than 6 hours and stand/walk less than 2 hours in an 8-hour workday,
> [Plaintiff] would experience recurring 2-hour work disruptions due to symptoms).

> The doctor also indicated that [Plaintiff] could not lift/carry even 10 pounds and
> that she had severe extremity restrictions.  Dr. Mohan provided no objective
> corroboration whatsoever, in support of his assessment.  The [ALJ] is not bound
> by the clinician's conclusory statement.  The undersigned requested that evidence
> be supplied post-hearing from Dr. Mohan.  The materials submitted related
> substantially to routine heath matters with benign evaluation results, and certainly
> do not justify the level of dysfunction suggested by the doctor.  The materials
> identified no limitation of motion, gait anomaly, neurological dysfunction,
> abnormal imaging or clinical findings.  As Dr. Mohan's opinions are not well
> supported objectively, and are contraindicated by other substantial evidence in the
> record, they are accorded minimal weight.
>
> (Tr. 21)

At the hearing, the ALJ stated that the only evidence in the record from Dr. Mohan was
the one-page September 2009 assessment, and he permitted Plaintiff additional time to submit
supporting records from Dr. Mohan's office (Tr. 39).  Plaintiff did submit additional records
from Dr. Mohan, which the ALJ reviewed.  The ALJ then found, correctly, that the evidence
submitted after the hearing from Dr. Mohan's office related to relatively routine health matters –
such as blood tests, pap smears and mammograms – and did not justify the restrictions found in
Dr. Mohan's September 2009 assessment (Tr. 21, 217-24).  Indeed, none of the additional
records contain examination findings, nor do they even mention Plaintiff's allegedly disabling
spinal condition (Tr. 217-24).  The additional records produced by Plaintiff also contained no
diagnostic imaging (Tr. 21, 217-24).  In fact, the entire medical record lacks diagnostic imaging
after Plaintiff's alleged onset of disability date, April 1, 2005.  The most recent diagnostic studies
– MRIs of Plaintiff's thoracic and lumbar spine performed in February 1999 – were normal (Tr.
156).  Plaintiff was repeatedly instructed by her doctors to have additional studies after April
2005, but failed to have them performed (Tr. 169, 175, 207, 216).

Furthermore, the record contains only minimal evidence addressing Plaintiff's alleged
spinal conditions, and the record viewed as a whole is inconsistent with Dr. Mohan's September
2009 assessment that Plaintiff had extreme limitations due to back aches.  Although Plaintiff

-14-

occasionally presented to medical sources for treatment of other conditions, she received only sporadic treatment for her musculoskeletal complaints after her alleged onset of disability date. Plaintiff attended physical therapy between March and May 2006, but missed several other appointments and reported no significant changes in her symptoms (Tr. 202). As such, the ALJ reasonably found that Dr. Mohan's September 2009 assessment was not supported by objective evidence and the ALJ was correct to assign that opinion minimal weight (Tr. 21).

In short, the ALJ's treating-source analysis was sufficient to provide this Court and Plaintiff with his reasons for rejecting Dr. Mohan's opinion, and the ALJ's decision to reject that opinion is supported by substantial evidence.

## III.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  January 17, 2012

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, January 17, 2012, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*